IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT CHEHADEH          :
                         :
   v.                    :    Civil Action No. DKC 16-1406
                         :
MICHAEL CHELST, *et al.* :
                         :

**MEMORANDUM OPINION**

The motion for summary judgment filed by Defendants Michael and Kathy Chelst (ECF No. 44), has been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. There are genuine disputes of material fact as to whether the Plaintiff Robert Chehadeh ("Mr. Chehadeh") has established that a dangerous condition existed, and if so, whether Defendant Michael Chelst ("Mr. Chelst") had a duty to warn of such a condition, as well as, whether Plaintiff was contributorily negligent, and whether an agency relationship existed, in this premises liability case. For the following reasons, the motion for summary judgment will be denied, in part, and the claims against Defendant Kathy Chelst will be dismissed.

**I.   Background**

   **A.   Factual Background**

Plaintiff Robert Chehadeh, a closet designer employed by Closet Stretchers (ECF No. 1 ¶ 4), first met Defendants Michael Chelst and Clifton Dobson ("Mr. Dobson") when Defendants visited

Mr. Chehadeh at Closet Stretchers to inquire about extending a portion of Mr. Chelst's master bedroom into the attic space above the garage. (ECF No. 44, at 4). Mr. Dobson was a handyman hired by Mr. Chelst to assist in home remodeling and alteration projects. (ECF No. 1 ¶ 2). Following Plaintiff's meeting with those Defendants, Plaintiff visited Mr. Chelst's home on May 23, 2013 for an inspection of the bathroom, closet, and attic. (ECF No. 44, at 5). Mr. Chelst and Mr. Dobson accompanied Plaintiff throughout the home during the inspection.[1] (*Id.*). While following Mr. Dobson, and without first looking before he stepped, Plaintiff entered the attic through a hole in Mr. Chelst's bathroom wall, fell through the drywall, and landed on the concrete floor of the garage below. (ECF No. 1 ¶ 6). As a result, Plaintiff suffered a variety of injuries, including fractures, a concussion, and chronic pain. (*Id.* ¶ 8). Plaintiff alleges that Mr. Dobson assured him that the attic was equipped with plywood flooring that was safe to stand upon. Plywood flooring had not been installed, however, and the attic consisted of only wooden joists with drywall attached underneath separating the garage from the attic. Due to this construction, the only load-bearing footings for Plaintiff to stand upon were the wooden joists. Defendant Mr. Chelst alleges

---

[1] Because the closet renovation project was meant to be a surprise to Mr. Chelst's wife, Defendant Kathy Chelst ("Mrs. Chelst"), she was not aware of the project until after the May 23 visit.

that he did not hear Mr. Dobson assure Plaintiff that the attic had plywood flooring. The parties dispute: (1) the level of visibility the bathroom lights provided the attic flooring; (2) whether there were any internal attic windows and, if so, what level of visibility they provided; (3) how long Mr. Dobson and Mr. Chehadeh were in the attic before the fall; (4) whether Mr. Chelst told Mr. Chehadeh after his fall that he was sorry because Mr. Dobson was supposed to install plywood flooring in the attic; and (5) whether the hole in the wall was made by Mr. Dobson for this specific project or whether firefighters broke a hole through the wall to check the attic for smoke. Notably, the parties have not provided any photographs or evidence of the relevant condition of the attic, or the hole made to enter the attic. Defendant Mr. Dobson is now deceased and has not been subject to a deposition or otherwise submitted testimony in any form.

**B. Procedural Background**

Plaintiff filed a complaint on May 11, 2016. (ECF No. 1). Plaintiff's complaint alleges that his injuries were proximately caused by the negligence of all three Defendants: Mr. Chelst, Mrs. Chelst, and Mr. Dobson. Mr. Dobson passed away on May 17, 2017. Defendants filed a suggestion of death on May 11, 2018. (ECF No. 43). On May 14, 2018, Defendants Mr. Chelst and Mrs. Chelst filed a motion for summary judgment. (ECF No. 44). Plaintiff filed an opposition on June 15, 2018 (ECF No. 47), and

Defendants Mr. Chelst and Mrs. Chelst replied on June 21, 2018 (ECF No. 48). Plaintiff then filed a consent motion for substitution of Defendant pursuant to Fed.R.Civ.P. 25(a) on July 31, 2018. (ECF No. 49). The motion was granted on August 16, 2018, and the Estate of Clifton Michael Dobson, c/o Marvin Liss, Personal Representative was substituted for Mr. Dobson. (ECF No. 51). Plaintiff was directed to serve Marvin Liss, Personal Representative of the Estate of Clifton Michael Dobson, and did so on August 30, 2018. (ECF No. 54). Defendant Marvin Liss, Personal Representative of the Estate of Clifton Michael Dobson, has not entered an appearance, or answered the amended complaint. Plaintiff will be directed to file and serve by mail on the Estate a motion for entry of default by the Clerk or provide a report as to why such motion would be inappropriate.

**II. Standard of Review**

A motion for summary judgment will be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). To prevail on a motion for summary judgment, the movant generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248-50. A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . which that party will bear the burden of proof at trial[,]" there can be no "genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

**III. Analysis**

To establish a prima facie case for negligence under Maryland law, a plaintiff must prove: (1) the defendant owed a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the defendant's breach was the proximate cause of the injury. *See Rosenblatt v.*

*Exxon Co., U.S.A.*, 335 Md. 58, 76 (1994). In a negligence case postured under premises liability, the evidence must show that: (1) a dangerous condition existed; (2) the defendant had actual or constructive knowledge of it; and (3) such knowledge was gained in sufficient time to give the defendant the opportunity to remove it or to warn of it. *See Maans v. Giant of Md., LLC*, 161 Md.App. 620, 629 (2005). Under Maryland law, "no presumption of negligence on the part of the proprietor arises merely from a showing that an injury was sustained [on] his [property]." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 118-19 (1955).

### A. Defendant Kathy Chelst

Defendants' motion for summary judgment asserts that all claims against Mrs. Chelst should be dismissed because, at the time of the incident, Mrs. Chelst did not know about the master bathroom closet renovation project, did not hire Mr. Dobson to supervise, and did not know that Plaintiff came to inspect her home. (ECF No. 44, at 8). Plaintiff's response to Defendants' motion for summary judgment stipulates to a voluntary dismissal with prejudice for Plaintiff's claims against Mrs. Chelst. (ECF No. 47, at 2). All claims against Mrs. Chelst are therefore dismissed.

### B. Defendant Michael Chelst

Plaintiff asserts that the lack of flooring or plywood in the attic was dangerous, and that Mr. Chelst "was fully aware of the

6

dangerous nature of the unfinished attic and should have taken reasonable steps to warn and/or protect Mr. Chehadeh," (ECF No. 47, at 9, 16), and that, rather than warning him about the dangerous condition, he, through his agent Mr. Dobson, actually assured him that the attic was safe to enter. Mr. Chelst's motion, in parallel, argues that because Plaintiff inspects homes professionally, Mr. Chelst did not have a duty to warn of, or make safe, "the dangers of walking on anything other than the ceiling joists" because "[w]here a dangerous condition is obvious, the plaintiff may be charged with knowledge of it, and the knowledge of the condition may remove the element of unreasonableness from a danger."[2] (ECF No. 44, at 11-12). Mr. Chelst further argues that Mr. Chehadeh was contributorily negligent as a matter of law (*id.*, at 17-19), and that Mr. Dobson was not his agent, and thus, Plaintiff cannot hold him personally liable for Mr. Dobson's alleged representations (*id.*, at 16).

In premises liability cases, the duty of care owed by an owner or occupier of a premises is a function of his legal relationship

---

[2] Contrary to Mr. Chelst's assertion, a court cannot take judicial notice that an attic's common construction consists of wooden joists where the only evidence Mr. Chelst provides is an unsourced image of attic flooring. A court may take judicial notice of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Fed.R.Ev. 201; Md. Rule 5-201(b). Mr. Chelst's proffer of an unsourced image of attic construction fails to meet either of these standards.

to the person entering on the premises. "Specifically, in Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (i.e., a business invitee), a licensee by invitation (i.e., a social guest), a bare licensee, or a trespasser." *Rybas v. Riverview Hotel Corp.*, 21 F.Supp.3d 548, 561 (D.Md. 2014). Plaintiff here entered Mr. Chelst's home as part of a project to expand Mr. Chelst's bedroom closet and was thus a business invitee. *Rhaney v. University of Maryland Eastern Shore*, 388 Md. 585, 602 (2005) ("Business invitees are visitors invited to enter the premises in connection with some business dealings with the possessor."). "[T]he landowner's duty to business invitees is to use reasonable and ordinary care to keep his premises in a safe condition and to protect invitees against the dangers of which the landowner is aware or which, with reasonable care, he could have discovered." *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 355 (1986). "A landowner is not, however, an insurer of the safety of his business invitees." *Id.*

   1.  **Duty to Warn**

Whether Mr. Chelst had a duty to warn turns on the "open and obvious" doctrine. "An owner owes a duty to an invitee to warn of known hidden dangers, not open or obvious ones." *Ramseur v. United States*, 587 F.Supp.2d 672, 684 (D.Md. 2007). Under the "open and obvious" doctrine, a plaintiff is responsible for exercising "due

8

care for his or her own safety," which includes "a duty to look and see what is around[.]" *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.App. 381, 389 (1997). Maryland courts apply the RESTATEMENT (SECOND) OF TORTS § 343 (1965) standard for open and obvious dangers:

> According to this provision of the Restatement, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." The comments to § 343A(1) state that "'[o]bvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment."

George E. Powell, Jr., 41 Am. Jur. Proof of Facts 3d 65 (1997); *see also Pfaff v. Yacht Basin Co.*, 58 Md.App. 348, 354 (1984) (applying Restatement standard). Whether a condition is open and obvious is typically a question for the factfinder, however, a court may rule as a matter of law where it is clear that any reasonable person in a plaintiff's position must have understood the danger. *C & M Builders, LLC v. Strub*, 420 Md. 268, 299 (2011). There is no "exact test or formula" for determining whether a condition is open and obvious as a matter of law. *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F.Supp.2d 351, 353 (D.Md. 1998).

The United States Court of Appeals for the Sixth Circuit, albeit in an unpublished decision, found that a property owner had no duty to protect a plaintiff working in the owner's attic who fell when the plaintiff failed to "stand on the joists rather than the non-load-bearing drywall." *Detrick v. Heidtman Steel Products, Inc.*, 677 F.App'x 240, 244 (6th Cir. 2017). Although the plaintiff in *Detrick* argued that walking through an attic is uncommon and thus a "hidden condition," the court found that "[i]t is likely that an average person would know of the risks associated with working in an attic." *Id.* In coming to this conclusion, the court noted that "[f]atal to [plaintiff's] position, though, is [plaintiff's] statement that he was instructed not to step on the drywall."[3] *Id.* While *Detrick* is informative, the case at bar is substantially distinguishable. Unlike in *Detrick*, Mr. Chehadeh was not instructed to avoid stepping on the drywall flooring. In fact, Mr. Chehadeh alleges that he was told that the attic was safe to enter due to sturdy plywood flooring and was instructed to

---

[3] Maryland law similarly supports the application of the open and obvious doctrine when a plaintiff who is, or should be, capable of identifying a dangerous condition fails to avoid it. *Ramseur v. U.S.*, 587 F.Supp.2d 672, 685 (D.Md. 2007) (holding defendant not liable where plaintiff could have avoided falling on perforated mat by looking down); *Pfaf*, 473 A.2d at 479 (finding defendant parking lot owner not liable where plaintiff chose to negotiate risk of falling over parking lot guardrail after climbing into bed of truck); *Smith v. Philadelphia, B. & W.R. Co.*, 111 Md. 274, 274 (1909) (holding plaintiff employee "well acquainted" with open and obvious risks of working on freight cars cannot recover for injury sustained on job).

follow Mr. Dobson through the access port—which Mr. Dobson allegedly made specifically for Mr. Chehadeh's assigned project and had entered safely in the past to take measurements of the attic. Thus, Mr. Chehadeh has produced evidence that he was assured both implicitly and explicitly that the attic was safe to enter. Further, there are disputes as to what level of visibility the bathroom lights provided the attic flooring, and whether there were any internal attic windows, and if so, what level of visibility they provided. There is also a dispute as to whether Mr. Chehadeh immediately fell upon placing his feet within the attic, or whether he fell after spending time within the attic with Mr. Dobson. Although Mr. Chehadeh was taught to inspect attics for safety before entering (ECF No. 44-3, at 13:15-14:22), and a lack of plywood flooring in an attic might be an open and obvious danger in other circumstances, the effect of Mr. Dobson's alleged assurances, both implicit and explicit, and Mr. Chelst's failure to warn, are unclear. *Cf. Franklin Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 868-69 (4th Cir. 1984) ("The jury's finding that the trucker reasonably relied on [the shipper's] assurance about the safety of the load is tantamount to a finding that the defect was not open and obvious."); *Vargo-Schaper v. Weyerhaeuser Co.*, 619 F.3d 845, 849 (8th Cir. 2010) ("[C]ourts have looked at whether the shipper provided any assurances regarding the safety of the load to the driver, which

detracts from the open and obvious nature of the defect."); *Detrick*, 677 F.App'x at 244; *Va. Dare Stores, Inc. v. Schuman*, 175 Md. 287, 294-96 (1938) (finding in a negligent representation claim where a business invitee and a homeowners' allegations conflict regarding assurances of safety, and plaintiff suffers injuries as a result of such assurances, that it is a question of fact for a jury to determine liability); *Tie Bar, Inc. v. Shartzer*, 249 Md. 711, 716 (1968). Therefore, there is a dispute of fact whether the absence of plywood flooring was a dangerous condition of which Mr. Chelst had a duty to warn of or make safe.

### 2. Contributory Negligence

In similar fashion, Mr. Chelst's allegation that Mr. Chehadeh was contributorily negligent as a matter of law is a question of fact for the jury to determine. Contributory negligence operates as an absolute bar to recovery under Maryland law. *Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 451 (1983) ("[A] plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence."). Maryland law defines contributory negligence as "conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm." *Kassama v.*

*Magat*, 368 Md. 113, 127 (2002). The focus of the contributory negligence defense is on whether the plaintiff took appropriate precautions to protect his own interests. *Id.* While the issue of contributory negligence is generally one of fact to be decided by a jury, it becomes a matter of law when reasonable minds could not differ on the question. *Union Mem'l Hosp. v. Dorsey*, 125 Md.App. 275, 282 (1999). The burden of proving contributory negligence is on the defense. *McQuay v. Schertle*, 126 Md.App. 556, 568 (1998) (citing *Myers v. Bright*, 327 Md. 395, 403 (1992)). Because it is a question of fact whether the lack of plywood flooring in Mr. Chelst's attic was open and obvious, reasonable minds may differ on the question of whether Mr. Chehadeh took reasonable precautions to protect his own interest.

### 3. Agency

Plaintiff argues that Mr. Chelst is liable because he is an owner and possessor of the property, and Mr. Dobson, acting as Mr. Chelst's agent, represented to Plaintiff that the attic space was safe. (ECF No. 47, at 17). Mr. Chelst responds that Plaintiff cannot hold him personally liable for Mr. Dobson's alleged representations because Mr. Dobson's statements are not legally attributable to Mr. Chelst and should be excluded as impermissible hearsay. (ECF No. 44, at 16). Mr. Chelst chiefly argues that Mr. Dobson's statements are not legally attributable to Mr. Chelst because Mr. Dobson was an independent contractor and Mr. Chelst

13

"exercised no control over any part of the closet renovation project which could serve as a basis upon which [he] could be held liable." (ECF No. 44, at 16).

A statement is not hearsay if it was made by a party's agent or servant concerning a matter within the scope of the agency or employment, and it was made during the existence of the agency or employment relationship. Fed.R.Evid. 801(d)(2)(D). The plaintiff has the burden of proving the nature and extent of the principal-agent relationship. *Green v. H & R Block*, 355 Md. 488, 503 (1999). "Because the existence of an agency relationship is a factual matter under Maryland law, [the] [c]ourt evaluates . . . whether factual allegations are legally sufficient to establish an agency relationship." *Proctor v. Metro. Money Store Corp.*, 579 F.Supp.2d 724, 735 (D.Md. 2008) (citing *Green*, 735 A.2d at 1048). "Three factors are considered in determining whether an agency relationship exists: '(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent.'" *Haley v. Corcoran*, 659 F.Supp.2d 714, 725 (D.Md. 2009) (citing *Green*, 735 A.2d at 1048). "In the usual case, the existence of an agency relationship is a question of fact." *P. Flanigan & Sons, Inc. v. Childs*, 251 Md. 646, 652 (1968) (citing *Heslop v. Dieudonne*, 209 Md. 201, 206 (1956)). Apparent authority arises where the "purported agent may or may not have actual

authority to act for the purported principal, but because of conduct on the purported principal's part the third person believes that the authority to act exists." *Medical Mut. Liability Ins. Soc. Of Maryland v. Mutual Fire, Marine & Inland Ins. Co.*, 37 Md.App. 706, 720 (1977)). "The principal, either actively or passively, creates a situation that causes the third person to be misled." *Id.*

Plaintiff alleges that, based on Mr. Chelst's presence and actions, Mr. Chelst held out Mr. Dobson as his agent. (ECF No. 47, at 20). Defendants, Mr. Chelst and Mr. Dobson, visited Closet Stretchers in concert on at least two occasions, Mr. Dobson took measurements of the attic space and prepared a hand-drawn diagram of the dimensions which were given to Plaintiff, and both Mr. Chelst and Mr. Dobson led Plaintiff through Mr. Chelst's home together to facilitate Closet Stretchers' estimate. Mr. Chelst admits he was present and standing in the bathroom with Mr. Dobson and Plaintiff before the accident. (ECF No. 44, at 5). Further, it is disputed whether Mr. Chelst apologized to Mr. Chehadeh after his fall and told him that Mr. Dobson was supposed to install plywood flooring in the attic. (ECF No. 47, at 16). Viewed in the light most favorable to the Plaintiff, there are genuine disputes of material fact as to whether Mr. Dobson had the authority to alter Mr. Chelst's legal relations or was acting primarily for Mr. Chelst's benefit, and as to what level of control

Mr. Chelst held over Mr. Dobson. A reasonable jury could determine that Plaintiff was justified in concluding that Mr. Dobson "had actual authority or apparent authority to act as [an] agent for [Mr. Chelst]."[4] (ECF No. 47, at 19). Therefore, Mr. Chelst's argument fails because he has not shown as a matter of law that Mr. Dobson's statements are inadmissible and not attributable to him for purposes of this motion for summary judgment.

**Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Mr. Chelst will be DENIED, in part, and the claims against Defendant Kathy Chelst will be DISMISSED. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[4] Even if Mr. Dobson is determined to be an independent contractor, RESTATEMENT (SECOND) OF TORTS § 414 explains that an individual who hires an independent contractor but still "retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Mr. Chelst's control over the closet renovation project appears to be in dispute, and he therefore may be liable even if Mr. Dobson is considered an independent contractor. However, because there is a genuine dispute of material fact over the existence of an agency relationship, this issue need not be addressed at this time.